FLEMING et al., Trustees, v. BLUBAUGH.

No. 32078. March 19, 1946.

Rehearing Denied June 4, 1946.

*169 P. 2d 289.*

W. R. Bleakmore and James E. Grigs-

by, both of Oklahoma City, for plaintiffs in error.

George W. Miller, of Ponca City, for defendant in error.

CORN, J. Plaintiff brought this action to recover damages for the loss of a carload of wheat, purchased for livestock feed, shipped over defendant's lines and consigned to plaintiff at Ed. Kelly switch in Kay county, Okla.

April 1, 1944, a grain elevator at Elwood, Kan., was destroyed by fire. Approximately 300,000 bushels of damaged wheat remained, which was salvaged by the Mid-Continent Grain Company. The wheat so remaining had been damaged and was water-soaked, both by attempts to put out the fire and by exposure to the weather. In selling this grain the Mid-Continent Grain Company ordered open coal cars in which to ship the grain, which was unfit for human consumption.

Plaintiff and a companion made a trip to view this grain and took samples, these being introduced in evidence at the trial, and ascertained the price for which the grain could be bought. After returning home, plaintiff, on April 18, 1944, ordered a carload of this wheat shipped to him at Ed. Kelly switch, via defendant's lines. The wheat shipped was loaded by power shovels into open cars prior to April 20, 1944. After being loaded the wheat was inspected and shown to be of low quality, containing foreign material and too much moisture to be tested on the machine available to the inspector.

Bill of lading with draft attached for $740.46 was sent to a Tonkawa bank, and was paid by plaintiff on April 28, 1944. The shipment arrived at destination Sunday, April 30, 1944, and plaintiff started unloading on Monday. The wheat was found to be wet, moulded and unfit for any purpose. The evidence showed that two days was a reasonable time for such shipment to travel from Elwood, Kans., to Ed. Kelly switch in Kay county over defendant's line.

At the close of all the evidence the trial court made findings of fact. Judgment was rendered for plaintiff for $740.46, value of grain and freight charges, but recovery was denied for loss of livestock allegedly caused by eating the grain, as well as the amount sought covering plaintiff's cost of handling.

Motion for new trial was overruled and defendants have appealed on two grounds: (1) The decision and judgment is not sustained by the evidence, and is contrary to law; (2) errors of law occurring at the trial and excepted to by defendants.

The argument in support of these two general propositions is that in order to sustain plaintiff's contention that the wheat was unfit for the purpose for which purchased (livestock feed) on April 20, 1944, or on April 22, 1944, when the bill of lading was issued, and that it became unfit for consumption by reason of the delay, it was necessary for the trial court to indulge in conjectures and speculation as to the reason for its becoming worthless.

Defendants complain particularly of finding No. 13, which was:

"The court further finds and concludes that by reason of the unreasonable delay in transporting said wheat from Elwood, Kansas, to Ed. Kelly switch in Kay County, Oklahoma, the said wheat became spoiled and burned in transit."

Defendants urge that this finding is not only unsupported by the evidence, but is contrary to the undisputed testimony. The basis of this argument is that the bill of lading showed this to be "bulk salvage wheat," or wheat which was known to have been salvaged after damage from the fire and water, so that no presumption could apply that the goods were received in good order, thus placing the burden upon the carrier to rebut such presumption. See Atchison, T. & S. F. Ry. Co. v. Eddie et al., 177 Okla. 634, 61 P. 2d 681, and cases cited therein.

Defendants also contend that even if it be considered that the presumption (i.e., of delivery to carrier in good order) did apply, nevertheless they (defendants) offered undisputed evidence to show the condition of the wheat on and prior to April 20, 1944, and that the presumption thus disappeared. Defendants insist that plaintiff's evidence concerning the condition of the wheat on April 20, 1944, was not sufficient to sustain the trial court's judgment.

The bill of lading issued by defendants showed the car to be loaded with "bulk salvage wheat," and received *in apparent good order*. This fact was a strong circumstance in the proof that the carrier received the wheat knowing it to be salvaged grain and in a damaged condition, but still in good order at the time of the receipt for the purpose for which intended, although unfit for human consumption. This circumstance, coupled with the delay in delivery, is competent evidence tending to establish that the grain deteriorated by reason of the delay in transit. There is no testimony in the record upholding defendants' contention that the wheat was totally unfit for any purpose at the time it was received. The fact defendants did accept the wheat for shipment negatives the argument that the wheat was unfit for any purpose at the time it was shipped.

The trial court correctly concluded that, although the evidence showed this grain to be unfit for human consumption at the time received, nevertheless it was salvaged grain fit for use as livestock feed and was so received by defendants in apparent good order insofar as its use for such purposes was concerned. Defendants had the right to reject the shipment if they determined it to be entirely unfit for any purpose by reason of being so wet or badly damaged as to be entirely worthless. This they did not do, but received it for shipment and in good order insofar as it was of value for the purpose for which intended. We must necessarily conclude that they are responsible for the further damage, resulting in loss of the grain, when it is shown such damage resulted from their own delay in shipment.

Defendants further contend that the evidence of their witnesses positively showed that at the time this wheat was shipped it was totally unfit for consumption, the only evidence contradicting this testimony being the testimony of one witness which defendants assert was only opinion evidence and of no value.

Five witnesses for defendants testified by deposition concerning the condition of the grain. All of these witnesses testified concerning the wet and damaged condition of the wheat. One witness testified there had been fires in other cars after same had been loaded, and that this wheat was unfit for consumption.

Another witness, a grain inspector for the State of Missouri, testified as to the condition of the wheat, that they were unable to run a moisture test, and that this wheat was unfit for human consumption. We cannot accept the interpretation of this testimony urged by defendants, that such testimony conclusively shows it was unfit for any purpose.

For the plaintiff one witness testified that when he and plaintiff examined this wheat when the wet wheat was raked away the wheat was good. Another witness, Harp, was manager of a grain elevator with several years' experience. He testified the samples offered in evidence showed the damage to be mostly from dampness heat and worthless. When called as a rebuttal witness Harp testified that wheat of the quality shown by the test was satisfactory for livestock feed. This testimony was not contradicted.

From this testimony the trial court concluded that the wheat was usable for the purpose for which intended at the time it was loaded. The delay in shipping was not explained away.

It is settled that in a law action tried to the court, this court will not

reverse a judgment because of the insufficiency of the evidence when there is any evidence reasonably tending to support the trial court judgment. Miller v. Dodds, 180 Okla. 576, 71 P. 2d 737; Caprock Oil Co. v. Hagan, 182 Okla. 124, 76 P. 2d 243; Oklahoma Nat. Gas Co. v. Shirley, 190 Okla. 319, 123 P. 2d 669; Bell Loan Co. v. Taylor, 193 Okla. 358, 143 P. 2d 820.

Judgment affirmed.

HURST, V.C.J., and OSBORN, WELCH, and DAVISON, JJ., concur. RILEY and ARNOLD, JJ., dissent.